LIFE INSURANCE COMPANY OF NORTH AMERICA, a corporation, Plaintiff-Counterdefendant-Appellee,

v.

William F. CAPPS and Renee Blutman, Defendants-Counterclaimants, Appellants.

No. 80–5086.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1981.

Decided Oct. 26, 1981.

Perry L. Hirsch, Hirsch & Ostrow, Los Angeles, Cal., for defendants-counterclaim-ants-appellants.

Irwin Waldman, Hagenbaugh & Murphy, Los Angeles, Cal., for plaintiff-counterde-fendant-appellee.

Before WRIGHT and FLETCHER, Circuit Judges, and EAST,* Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Life Insurance Company of North America (LICNA) issued a life insurance policy in February 1976 to Marilyn Capps who died the following August of a preexisting heart condition.

Appellants, beneficiaries under the policy, submitted a claim for insurance benefits. LICNA responded by rescinding the policy and refunding the premiums paid, asserting that Mrs. Capps had misrepresented and concealed material facts in her application.

LICNA brought a diversity action seeking a declaratory judgment that its rescission of the policy extinguished any obligation to pay insurance benefits. The beneficiaries filed counterclaims for breach of contract, infliction of emotional distress, and breach of the covenant of good faith and fair dealing.

The district court granted summary judgment for LICNA on all claims. The beneficiaries appeal.

*Of the District of Oregon.

## I. *Misrepresentation and Concealment*

In her application for life insurance from LICNA, Mrs. Capps answered "no" to the question:

Have you ... ever had heart trouble, high blood pressure, chest pains, ... or any other health impairments?

The next question asked whether during the past five years she had "consulted a physician or other practitioner." She replied, "yes," and explained:

Consulted with physician and hospitalized due to back problem in St. John's Hospital, Santa Monica, Ca. in 1972. Full recovery.

From 1973, and probably from as early as 1970, she was treated for and suffered symptoms from her heart condition, a prolapsed mitral valve. She had chest pains, shortness of breath, dizziness, and at least one incident of a brief loss of consciousness.

She was aware of her symptoms and their relationship to her heart. She consulted two cardiologists and relied on medication they prescribed to relieve her dizziness and other heart problems. She entered a hospital coronary care unit on an emergency basis in 1975.

LICNA cites *Cohen v. Penn Mutual Life Insurance Co.*, 48 Cal.2d 720, 312 P.2d 241 (1957). Cohen, a physician, falsely denied on an insurance application that he had undergone medical treatment during the previous ten years, that he had received an electrocardiogram, that he had been diagnosed as suffering from high blood pressure, and had been hospitalized. The California Supreme Court held that by his false answers the applicant misrepresented and concealed material facts, which justified the company's refusal to pay policy benefits.

Notwithstanding Mrs. Capps' undisputed history of heart trouble, the beneficiaries argue that because she believed it to be insubstantial she was justified in not revealing on the insurance application her heart condition, treatment, or symptoms. They rely on *Thompson v. Occidental Life Insurance Co. of California*, 9 Cal.3d 904, 513 P.2d 353, 109 Cal.Rptr. 473 (1973).

In *Thompson*, the insurer argued that its insurance contract was voidable for misrepresentations of medical history by the deceased insured. The applicant consulted physicians several times during the two months preceding his application, complained of chest pains, underwent an electrocardiogram, and received treatment for phlebitis. The California court refused to reverse the trial court's judgment for the beneficiaries.

The beneficiaries on this appeal point to language in *Thompson* that reads:

[I]f the applicant for insurance had no present knowledge of the facts sought, *or failed to appreciate the significance of information related to him,* his incorrect or incomplete responses would not constitute grounds for rescission.

9 Cal.3d at 916, 513 P.2d at 360, 109 Cal. Rptr. at 480 (emphasis added).

The parties attempt vigorously to distinguish *Thompson* on the one hand and *Cohen* on the other. Although superficially dissimilar, we are not convinced that *Thompson* represents a radical departure from earlier California law. *But see Lettieri v. Equitable Life Assurance Society,* 627 F.2d 930, 932 (9th Cir. 1980) (dicta that *Thompson* is distinct from prior law made in choice of law analysis).

■ The general rule is that misrepresentation justifies rescission. Although *Thompson* recognizes an exception when the applicant "fail[s] to appreciate the significance of information related to him," it cites *Cohen* as primary authority for the exception.

The *Cohen* court wrote:

[A] layman might reasonably be excused if, in disclosing information, he failed to understand the meaning of certain medical terms and for that reason omitted some fact in his medical history ....

48 Cal.2d at 726, 312 P.2d at 244.

■ Using the *Cohen* language as a guide, we believe the *Thompson* exception must be interpreted more narrowly than the beneficiaries urge. We read the California rule to be that an applicant for life insurance is not faulted for failing to disclose a material fact when, because he or she fails to appreciate the significance of certain information, the *existence* of a condition queried on the application is not known.

The beneficiaries argue that the insured's physician and husband intentionally misled and deceived her regarding the seriousness of her condition. But they do not claim that she was unaware that she had a heart ailment. This is not a case in which an applicant suffered symptoms of a material condition, but mistakenly attributed them to some other cause.

She admittedly was aware of her condition, symptoms, and treatment. She understood the medical terms for her heart problem, and realized the source of her dizziness, chest pains, and other symptoms.

■ She appreciated adequately the significance of her heart trouble, at least to the extent that she recognized its existence. She was obligated to provide a responsive answer to the insurance company's question that asked whether she ever had experienced heart trouble, high blood pressure, or chest pains. When she failed to do so, LICNA's rescission of the policy was proper.

## II. *Infliction of Emotional Distress*

■ An essential element of an intentional infliction of emotional distress cause of action is outrageous conduct. *Stoiber v. Honeychuck,* 101 Cal.App.3d 903, 921, 162 Cal.Rptr. 194, 202 (1980).

■ The beneficiaries recite several incidents they claim constitute the requisite extreme conduct. The record fails to reveal any single act or course of conduct rising to an outrageous, extreme, or abusive level.

We forego comment on the patently innocuous incidents. The beneficiaries otherwise cite LICNA's 7-month delay in denying their claim, the conduct of a LICNA investigator, an alleged threat to Mr. Capps' employment, and the filing of the declaratory judgment action.

The undisputed facts show that LICNA's investigation was reasonably prompt and diligent. Although its investigator may have lacked tact, his actions certainly were not outrageous.

We discern no threat to Capps' employment in the letter of which he complains. The applicable portion reads:

> We are aware that you are an attorney associated with the law firm of Adams, Duque and Hazeltine which specializes in representing insurance companies including [LICNA]. As such, we believe that you can recognize that [LICNA] is merely trying to complete an investigation . . . .

The filing of a lawsuit, unless patently groundless, is not outrageous behavior.

The district court properly entered summary judgment for LICNA.

### III. Breach of Good Faith Covenant

■ An insurance company does not breach its implied covenant of good faith and fair dealing when it investigates a claim. This investigation was reasonable, the counterclaim was meritless, and summary judgment was proper.

### CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.

EAST, Senior District Judge, dissenting in part and concurring in part:

I respectfully dissent from the majority's view on the issue of misrepresentation and concealment since I believe that a full reading of *Thompson v. Occidental Life Insurance Co. of California*, 9 Cal.3d 904, 513 P.2d 353, 109 Cal.Rptr. 473 (1973), and particularly the language therefrom quoted by the majority, entitled the plaintiffs to a jury trial on their avowed facts of a failure on the part of the deceased to appreciate the significance of information related to her by her doctors and members of the family. I would reverse the summary judgment on the issue and remand for a jury trial.

I concur in the affirmation of the summary judgment on the issue of a breach of the good faith covenant on the part of the defendants.